FILED
JAN 2 2 2001
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, INC., BILL JENNINGS | |
| Plaintiffs, | NO. CIV. S-00-0334 WBS/DAD |
| v. | MEMORANDUM AND ORDER |
| CARLTON D. MOORE, in his official capacity as Director of the California Department of Boating and Waterways; CALIFORNIA DEPARTMENT OF BOATING AND WATERWAYS, | |
| Defendants. | |

----ooOoo----

Plaintiff San Francisco Baykeeper, Inc. ("Baykeeper"), also known as Waterkeepers Northern California, sues defendant California Department of Boating and Waterways ("DBW") pursuant to the citizen's enforcement provision of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. §§ 1251 et seq.; 33 U.S.C. § 1365. Plaintiffs move for summary judgment.

I.  Factual Background

Baykeeper is a nonprofit corporation dedicated to the

1

26

protection of the San Francisco Bay and Delta. Plaintiff Bill Jennings represents a Baykeeper project called "Deltakeeper," which is based out of Stockton, California, and dedicated to the protection of the San Joaquin-Sacramento Delta.

Defendant DBW is the lead agency charged with implementing California's water hyacinth and Egeria densa control program. See Cal. Harb. & Nav. Code § 64 (finding that the unprecedented accumulation of water hyacinth and Egeria obstructs navigation, impairs recreational use of waterways, "[has] the potential for damaging manmade facilities, and may threaten the health and stability of fisheries and other ecosystems with the delta and marsh"). In accordance with the control program, DBW sprays the "surface foliage" of the water hyacinth plant with chemical herbicides or pesticides between the months of December and April of each year.[1]

Plaintiff Jennings claims he is a frequent user of the delta waters and has personally witnessed defendants' spraying activities. As a result, Jennings asserts that he uses the water less often out of concern for his health and well being.

Plaintiffs allege that defendants' discharge of herbicides violates the Clean Water Act, 33 U.S.C. § 1311(a), which prohibits the discharge of pollutants without a permit under the National Pollutant Discharge Elimination System ("NPDES"). See 33 U.S.C. § 1342. On September 23, 1999,

---

[1] The water hyacinth plant consists of surface foliage and a subsurface root system. According to defendants, "some foliage of the hyacinth is, or may be, below the water surface at times," but defendants target only the foliage that is above the water surface. (See Pls.' Ex. N at 4: 17-21, Attached to White Decl.).

2

plaintiffs notified defendants of the alleged violations and their intent to file suit, as required under 33 U.S.C. § 1365(b)(1)(A). DBW ceased its herbicide applications on November 22, 1999.

On January 7, 2000, DBW applied for a NPDES permit with the Central Valley Regional Water Quality Control Board ("Regional Board"), which is responsible for enforcing the Clean Water Act and issuing NPDES permits in the Central Valley region of California.[2] Plaintiffs filed this action on February 16, 2000, seeking a declaration that defendants have "violated the Clean Water Act," and an injunction "compelling [d]efendants to comply with the Act."

The Regional Board has not yet made a determination regarding defendants' application, and DBW represents that it will not resume spraying until the board issues a NPDES permit or determines that such a permit is not required for the water hyacinth control program. In a letter dated August 2000, the Regional Board states "It would not be our intent to recommend enforcement action for operation of this control program prior to adoption of an [sic] NPDES permit" if DBW complies with a specified monitoring program.[3] (Pls.' Ex. P).

---

[2] The Administrator of the Environmental Protection Agency has delegated authority to issue NPDES permits to the State of California pursuant to 33 U.S.C. § 1342(b), which has placed the responsibility with the State Water Resources Control Board and its various Regional Water Quality Control Boards. See Boise Cascade Corp. v. U.S. EPA, 942 F.2d 1427, 1430 (9th Cir. 1991).

[3] If the Regional Board had commenced an enforcement action before plaintiffs' filed their suit, the suit would be barred under 33 U.S.C. § 1365(b)(1)(B).

II. Discussion

Because the court concludes that plaintiffs do not have standing under the citizen suit provision of the Clean Water Act, the court does not reach the merits of their claims or the other affirmative defenses raised by defendants.

The citizen suit provision of the Clean Water Act provides that "any citizen may commence a civil action on his own behalf ... against any person ... who is alleged to be in violation of ... an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). Section 1365 defines a "citizen" as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). "Any person" includes "any governmental instrumentality or agency to the extent permitted by the eleventh amendment." 33 U.S.C. § 1365(a). Subdivision (f) defines an "effluent standard or limitation" to include "an unlawful act under subsection (a) of section 1311 of [the Clean Water Act]." 33 U.S.C. § 1365(f).

The Ninth Circuit has held that the "CWA's citizen suit provision extends standing to the outer boundaries set by the 'case or controversy' requirement of Article III of the Constitution." Ecological Rights Foundation v. Pacific Lumber Company, 230 F.3d 1141, 1147 (9th Cir. 2000). Thus, the first consideration is whether plaintiffs have standing under Article III. Id.

Baykeeper or Deltakeeper has standing to bring suit on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c)

4

neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Pacific Lumber Company</u>, 230 F.3d at 1147 (quoting <u>Hunt v. Washington State Apple Advertising Comm'n</u>, 432 U.S. 333, 343 (1977)). Defendants concede that plaintiffs can meet the second and third elements, but argue that plaintiff Jennings cannot show he has standing to sue in his own right.

In order to have individual standing, Jennings must show (1) he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant[s]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Friends of the Earth v. Laidlaw Environmental Servs.</u>, 120 S.Ct. 693 (2000) (citing <u>Lujan v. Defenders Wildlife</u>, 504 U.S. 555, 560-561 (1992)).

The evidence fails as a matter of law to establish the first element of the test for standing. In environmental cases, the "injury in fact" requirement is satisfied if the plaintiff adequately shows that he "has an aesthetic or recreational interest in a particular place, ... and that interest is impaired by a defendant's conduct." <u>Pacific Lumber Co.</u>, 230 F.3d at 1147. Under <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 103 (1983), the reasonableness of plaintiff's fear or concern as a result of defendants' conduct is "dependent upon the likelihood of a recurrence of the allegedly unlawful conduct." <u>Lyons</u>, 461 U.S. at 108; <u>see</u> <u>Laidlaw</u>, 120 S.Ct. at 706.

Plaintiff Jennings, who is a member of Deltakeeper, has

5

repeatedly engaged in numerous water-related activities in the delta waters, including fishing, boating, swimming and water testing. (See Pls.' Separate Statement of Undisputed Facts ¶ 37). Jennings personally witnessed DBW's spraying activities and as a result, he has been fishing and recreating less often, and has stopped eating fish from the delta waters out of concern for his health. However, unlike the defendant in Laidlaw, DBW is no longer spraying herbicides in the Delta, and its continuation of the control program is not imminent. (See Moore Decl. ¶ 4-6) (stating that DBW has applied for a NPDES permit and has suspended the control program pending the resolution of its application); Laidlaw, 120 S.Ct. at 706 (emphasizing that in that case, the defendant's unlawful discharge of pollutants was occurring at the time the complaint was filed). Thus, Jenning's diminished enjoyment as a result of his purported fear or concern is not sufficient to establish an injury-in-fact under Article III according to Laidlaw.

        The evidence also fails as a matter of law to establish the third element, that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Laidlaw, 120 S.Ct. at 704. Plaintiffs ask the court to compel defendants to comply with the NPDES permit requirement under the Clean Water Act. Before plaintiffs filed this action, DBW submitted an application for a NPDES permit with the Regional Board, which is the authority charged with issuing the permits. Thus, if the court provided plaintiffs' requested relief, the status quo would not change because DBW's application is currently pending before the board. See Steel Co. v. Citizens

6

for a Better Env't, 118 S.Ct. 1003 (1998) (rejecting the argument that a defendant's voluntary cessation of illegal activity before the complaint is filed creates a presumption of future injury that satisfies the redressability requirement). There is thus no case or controversy.

In Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 57 (1987), the Supreme Court considered the jurisdictional requirements of the citizen suit provision. The Court examined the language of 33 U.S.C. § 1365(a)(1), which allows a civil action "against any person ... who is alleged to be in violation of [the Act]," and concluded that "[t]he most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." Gwaltney, 484 U.S. at 57. In Laidlaw, the Supreme Court again stated that "citizens lack statutory standing under § 505(a) [33 U.S.C. § 1365(a)] to sue for violations that have ceased by the time the complaint is filed." Laidlaw, 120 S.Ct. at 701. Therefore, plaintiffs must show an ongoing violation to establishing statutory standing.[4]

The court is aware of dicta in Don't Waste Arizona, Inc., v. McLane Foods, Inc., 950 F. Supp. 972 (D. Ariz. 1997),

---

[4] Mere allegations of continuing violations are sufficient to initially invoke the jurisdiction of the court under 33 U.S.C. § 1365(a)(1). However, those allegations may be challenged on a motion for summary judgment. In order to prevail on the merits, plaintiff must prove on going violations as an element of their claim under the CWA. See Gwaltney, 484 U.S. at 66.

interpreting Congress' 1990 amendment to the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(1), to effectively over-rule Gwaltney's holding that a citizen suit cannot be maintained under the CWA for "wholly past violations."[5] However, this court disagrees with Judge Silver's conclusion that the amendment alters Gwaltney's interpretation of the requirements for bringing a citizen suit under the CWA.

The amended language of the CAA allows a citizen suit against any person "who is alleged to have violated (if there is evidence that the alleged violation has been repeated), or to be in violation of" the CAA. 42 U.S.C. § 7604(a)(a). Although the amendment uses language that looks to the past ("to have violated"), Congress qualified this language by requiring "repeated" violations. The amendment is thus consistent with Gwaltney's holding that "citizen-plaintiffs must allege a state of either continuous or intermittent," as opposed to "wholly past," violations. Gwaltney, 484 U.S. at 57. The court believes that President Bush meant exactly what he said in his signing statement, when he declared that the amendment "codifies" Gwaltney by requiring litigants under the CAA to show "at a

---

[5] Cf. Glazer v. American Ecology Environmental Services Corp., 894 F. Supp. 1029 (E.D. Tex. 1995) (applying the CAA and finding that Congress' 1990 amendment to the CAA "effectively reversed the holding in Gwaltney"); Fried v. Sungard Recovery Services, Inc., 916 F. Supp. 465 (E.D. Pa. 1996) (applying the CAA and stating that the 1990 amendment "overruled Gwaltney with respect to wholly past violations"); U.S. v. LTV Steel Co., Inc., 187 F.R.D. 522 (E.D. Pa. 1998) (same); contra Atlantic States Legal Foundation, Inc. v. United Musical Instruments, U.S.A., Inc., 61 F.3d 473 (6th Cir. 1995) (relying on Gwaltney in holding that the plain language and structure of the EPCRA precludes citizen suit for purely historical violations cured after receipt of statutory notice).

minimum, intermittent, rather than purely past violations of the [CAA] in order to bring suit." 26 Weekly Compilation of Presidential Documents 1824, Nov. 19, 1990.

Moreover, the language of the CWA's citizen suit provision, which was previously identical to the CAA, has not since been amended like the CAA. As noted above, in Laidlaw, the Supreme Court reaffirmed that citizens lack statutory standing under the CWA to sue for violations that have ceased by the time the complaint is filed.

In the Ninth Circuit, "a citizen plaintiff may prove ongoing violations 'either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.'" Sierra Club v. Union Oil Co. of Cal., 853 F.2d 667, 671 (9th Cir. 1988) (quoting Chesapeake Bay Foundation v. Gwaltney ("Gwaltney II"), 844 F.2d 170, 171-72 (4th Cir. 1998), on remand from 484 U.S. 49). "Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition." Id. (quoting Gwaltney II, 844 F.2d at 172 (also phrasing the question as "whether the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit")).

Plaintiffs cannot show continuing violations on or after the filing date. DBW ceased its spraying activity on November 22, 1999, and submitted its application for a NPDES permit with the Regional Board on January 7th, after plaintiffs provided notice pursuant to 33 U.S.C. § 1365(b). Plaintiffs did

9

not file this suit until February 16, 2000.

Similarly, in Gwaltney, the plaintiff filed suit under section 1365(a) after the defendant brought itself into compliance with an existing NPDES permit. The Supreme Court reasoned that the purpose of the 60-day notice requirement under section 1365(b) is to give the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus ... [render] unnecessary a citizen suit." Gwaltney, 484 U.S. at 60 ("the harm sought to be addressed by the citizen suit lies in the present or the future, not the past"). Accordingly, the Court vacated the district court's denial of the defendant's motion to dismiss for lack of subject matter jurisdiction.

Plaintiffs, citing a Fifth Circuit case, contend that "where, as here, a discharger has failed to obtain a NPDES permit in the first instance (as opposed to having violated the terms of an existing permit), that discharger 'remains in a state of violation' as a matter of law." See Carr v. Alta Verde Industries, Inc., 931 F.2d 1055, 1062 (5th Cir. 1991). Carr is distinguishable in a significant respect because in that case, the defendant did not apply for a permit until a year and a half after plaintiffs filed suit. Id., 931 F.2d 1065 n.11.

Plaintiffs also argue that a reasonable trier of fact could find a continuing likelihood of a recurrence because the Regional Board has stated it will not pursue an enforcement action against DBW if it resumes spraying prior to adoption of a

NPDES permit.[6]  Plaintiffs further note that the Regional Board currently believes that a permit is not required for the water hyacinth control program.[7]  The court will not speculate on what the board might do at some future time.[8]

Moreover, Carlton Moore, who is the Interim Director of DBW and controls the department's execution of the water hyacinth control program, has declared that DBW "will not engage in any herbicidal activities until such time as the Regional Board or the State Board issues a substantive ruling on the necessity of an [sic] NPDES permit and, if a permit is deemed necessary, until issuance of such permit."[9]   (Moore Decl. ¶ 6).

Plaintiffs further argue that DBW's "mere voluntary

---

[6]  The Regional Board's intent not to seek enforcement is conditioned on DBW's compliance with existing regulations from the Department of Pesticide Regulation and the Monitoring and Reporting Program outlined by the Regional Board for DBW.  (Pls.' Ex. P).

[7]  Defendants admit receiving information from the Regional Board's Chief Counsel that the board's legal position is "pesticide applications for purposes of controlling aquatic weeds are not subject to the Clean Water Act's NPDES permit requirement."  (See Pls.' Ex. N at 9:10-17).  However, the board has not issued a final decision.

[8]  The Regional Board held a quasi-adjudicatory hearing regarding DBW's permit application on October 27, 2000, but did not issue a ruling.  DBW has petitioned the State Water Resources Control Board for review of the Regional Board's decision not to issue a ruling at the October hearing.  (See Moore Decl. ¶ 5).

[9]  The court recognizes that such a declaration is not sufficient to support a finding of mootness, where the burden is on the defendant to show it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968).  Here, plaintiffs have the burden on their motion for summary judgment to establish continuing violations as an element of their claim under the Clean Water Act, 33 U.S.C. § 1365(a)(1); Gwaltney, 484 U.S. at 66.

cessation of [herbicidal spraying] does not moot [the] case." The rule regarding "voluntary cessation" prevents a defendant from obtaining dismissal on mootness grounds when he merely halts offending conduct in response to litigation. See Steel Co., 118 S.Ct. at 1020 (explaining that when a defendant ceases the complained-of activity in response to a suit for injunctive relief, courts allow a presumption of future injury); United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)(placing a "heavy burden" on defendants to show it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"). It is not appropriate to apply the "voluntary cessation" rule here as a substitute for plaintiff's burden to establish standing. See Laidlaw at 710 (distinguishing the doctrines of standing and mootness, and stating "by the time mootness is an issue, the case has been brought and litigated"); cf. Renne v. Geary, 501 U.S. 312, 320 (1991)(noting that "the mootness exception for disputes capable of repetition but yet evading review ... will not revive a dispute which became moot before the action commenced").

     Moreover, the cases cited by plaintiffs do not support application of the rule in this case. In United States v. W.T. Grant Co., 345 U.S. 629, 630 (1953), the defendants moved to dismiss the action as moot when, after the complaints were filed, a named defendant resigned from the employment that was the basis for the suit. Similarly, in Phosphate Export Assn., the mootness argument rested on events occurring after the case was submitted to the district court. Phosphate Export Assn., 393 U.S. at 202. Further, in Carr, the defendant made improvements to its waste

water disposal system and applied for a NPDES permit after plaintiffs filed their complaint.  See Carr, 931 F.2d at 1065.

Allowing plaintiffs to file suit after DBW submitted its application for a NPDES permit would nullify the established purpose of the Clean Water Act's notice provision, which is to give the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus ... [render] unnecessary a citizen suit." Gwaltney, 484 U.S. at 60. Accordingly, the undisputed facts show that plaintiffs do not have standing to maintain a citizen's enforcement action under 33 U.S.C. § 1365(a)(1).

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment be, and the same hereby is, DENIED.  The complaint is dismissed without prejudice to re-filing in the event that the Regional Board determines that a NPDES permit is not necessary or DBW resumes its herbicidal applications to water hyacinth in delta waters.

DATED: January 19, 2001

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

```
              United States District Court
                        for the
              Eastern District of California
                    January 22, 2001


              * * CERTIFICATE OF SERVICE * *


                                    2:00-cv-00334
```

Waterkeepers

    v.

Moore

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on January 22, 2001, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

```
        Ellison Folk                            SH/WBS
        Shute Mihaly and Weinberger
        396 Hayes Street                        MG/DAD
        San Francisco, CA   94102

        William D Cunningham
        Attorney General's Office of the State of California
        PO Box 944255
        1300 I Street
        Suite 125
        Sacramento, CA   94244-2550
```

                                                             Jack L. Wagner, Clerk

                                      BY: _____
                                                Deputy Clerk